

FILED

Jun 29 2017, 10:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kurt A. Young
Nashville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Daniel E. Messel,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

June 29, 2017

Court of Appeals Case No.
07A01-1610-CR-2425

Appeal from the Brown Circuit
Court

The Honorable Judith A. Stewart,
Judge

Trial Court Cause No.
07C01-1504-MR-113

**Baker, Judge.**

[1] Daniel Messel appeals following his conviction for Murder[1] and adjudication for being an Habitual Offender.[2] Messel argues that the trial court erred by admitting certain evidence. He also appeals the sentence imposed by the trial court, contending that it is inappropriate in light of the nature of the offense and his character. Finding no error and that the sentence is not inappropriate, we affirm.

## Facts

[2] On April 23, 2015, Hannah Wilson, a 22-year-old senior at Indiana University, finished her last exam for her undergraduate degree and began celebrating with friends that afternoon. Later that evening, Hannah and some of her friends decided to go to a bar in Bloomington. While they were waiting in line to enter the bar, however, Hannah's friends decided that she was too intoxicated to continue with the evening, so they put her in a taxi and told the driver to take her home. Surveillance videos later obtained by police showed a car similar to Messel's following the taxi that was transporting Hannah. The taxi driver followed the instructions of Hannah's friends, dropping her off at the corner of 8th Street and Dunn, which was near her apartment.

[3] On the morning of April 24, 2015, Carol Bridges was driving from her Brown County home to Bloomington when she saw something along Plum Creek

---

[1] Ind. Code § 35-42-1-1.

[2] Ind. Code § 35-50-2-8(b).

Road near Indiana 45 that caught her attention, so she stopped to investigate. When she exited her car and walked closer, she realized there was a body, later identified as Hannah, lying in a vacant lot with a cell phone at its feet. Bridges then called the police. The Brown County Sheriff and his deputies, as well as the Indiana State Police, responded to the scene.

[4] As law enforcement began investigating, they learned that the cell phone near Hannah's body belonged to Messel. State Police detectives arrived at Messel's home early on the morning of April 24, 2015. He was not home, as he normally would have been, nor did he show up for work that day—a pay day— or call in to report his absence. He also did not respond to texts from a friend. Messel emptied his bank account and filled up his car with gas.

[5] Later that day, a neighbor called police when Messel returned home. State Police quickly drove to Messel's home and saw that he was carrying a plastic garbage bag out to his car. State Police arrested him at that time and seized the bag. Further investigation revealed that the bag contained clothing that had blood on it, some of which contained Hannah's DNA. Hannah's blood, hair, and DNA were found in the interior and exterior of Messel's car. Surveillance videos showed a vehicle similar to Messel's on the road that led to the crime scene early on the morning of April 24. Cell phone location evidence linked Messel to the location where Hannah was in Bloomington before her disappearance and to the area near the crime scene on April 24.

[6] An autopsy on Hannah's body was conducted on April 25, 2015. The autopsy revealed that she had sustained various injuries and that she had died after being struck multiple times with a blunt object on the left side of her head, crushing her skull.

[7] On April 27, 2015, the State charged Messel with murder. On December 3, 2015, the State added a count alleging Messel to be an habitual offender. Messel's jury trial began on August 2, 2016. At trial, the State introduced testimony that Messel once possessed a mag flashlight. Messel's attorney objected to this testimony, but the trial court overruled the objection and admitted the evidence.

[8] The jury found Messel guilty of murder on August 10, 2016. The jury then heard evidence regarding the habitual offender allegation and found that Messel is an habitual offender. On September 22, 2016, the trial court sentenced Messel to sixty years imprisonment for murder and enhanced that term by twenty years for the habitual offender finding. Messel now appeals.

# Discussion and Decision

## I. Admission of Evidence

[9] Messel first argues that the trial court erred by admitting evidence that he once possessed a mag flashlight, which the State posited may have been the murder weapon. The admission and exclusion of evidence falls within the trial court's sound discretion, and we will reverse only if the decision is clearly against the logic and effect of the facts and circumstances before it. *Johnson v. State*, 6

N.E.3d 491, 498 (Ind. Ct. App. 2014). Messel argues that this evidence was overly speculative, as a murder weapon was never identified, and that its prejudicial effect far outweighed its limited probative value. *See* Ind. Evidence Rule 403 (evidence may be excluded if probative value is substantially outweighed by a danger of unfair prejudice).

[10] We will assume solely for argument's sake that the admission of this evidence was erroneous. The erroneous admission of evidence is harmless where "the conviction is supported by substantial independent evidence of guilt so as to satisfy the reviewing court that there is no substantial likelihood the questioned evidence contributed to the conviction." *Duncan v. State*, 23 N.E.3d 805, 811 (Ind. Ct. App. 2014).

[11] In this case, the independent evidence of Messel's guilt in the record includes the following:

- Surveillance video places a vehicle similar to Messel's following Hannah's taxi home and also at the crime scene the next morning.
- Cell phone evidence places Messel at the location in Bloomington where Hannah was before she disappeared and also at the crime scene the next morning.
- Messel's cell phone was found next to Hannah's dead body.
- Messel was found with a garbage bag full of clothes covered in blood that contained Hannah's DNA.
- The interior and exterior of Messel's vehicle contained Hannah's blood, hair, and DNA.

Given this overwhelming independent evidence of Messel's guilt, we find that there is no substantial likelihood that the evidence related to his past ownership

of a mag light contributed to the conviction. In other words, any error was harmless. *See, e.g.*, *Wilson v. State*, 770 N.E.2d 799, 802 (Ind. 2002) (where there was no murder weapon introduced at trial, erroneous admission of photograph of the defendant with a gun was harmless where there was overwhelming evidence of his guilt).

[12] Messel argues that the harmless error standard requires us to conduct an impermissible reweighing of the evidence. Essentially, he asks us to ignore and abrogate the harmless error standard—an invitation we decline. Even if the admission of this evidence was erroneous, it was harmless, and we will not reverse on this basis.

## II. Appropriateness

[13] Messel also contends that the sentence imposed by the trial court is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) provides that this Court may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. We must "conduct [this] review with substantial deference and give 'due consideration' to the trial court's decision—since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence . . . ." *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

[14]	Messel was convicted of one count of murder, for which he faced a sentence of forty-five to sixty-five years imprisonment, with an advisory term of fifty-five years. Ind. Code § 35-50-2-3. He received a sixty-year sentence for this conviction. He was also found to be an habitual offender, for which he faced a sentence enhancement of six to twenty years. Ind. Code § 35-50-2-8(i). He received a twenty-year enhancement, for an aggregate term of eighty years imprisonment.

[15]	With respect to the nature of the offense, Messel preyed upon an intoxicated young woman at night, following behind her taxi until she was dropped off and alone. He brutally bludgeoned her to death, inflicting multiple injuries to her body, and then dumped her body as if it were a piece of trash in a vacant lot alongside a road in rural Brown County. The next day, he emptied his bank account, filled his car with gas, and was attempting to dispose of evidence when he was arrested. Nothing about the appalling nature of this offense renders his sentence inappropriate.

[16]	With respect to Messel's character, he has a lengthy criminal history. Among other things, he has convictions for criminal mischief, public intoxication, disorderly conduct, leaving the scene of an accident on two occasions, Class A misdemeanor battery on four occasions, Class A misdemeanor resisting law enforcement on three occasions, Class A misdemeanor operating while intoxicated endangering a person, Class C felony forgery, and Class C felony battery on three occasions. He has violated probation multiple times and has faced many additional charges to the ones that ended in conviction. His many

contacts with the criminal justice system have not caused him to reform his behavior, and his crimes have only become more serious with time. We do not find that Messel's character aids his appropriateness argument. In sum, we find that the sentence is not inappropriate in light of the nature of the offense and his character.

[17] Messel devotes much of his argument to a claim that the trial court overlooked several mitigating circumstances, but we do not review this argument under Appellate Rule 7(B). Consequently, he has waived it. Waiver notwithstanding, he argues that the trial court should have found his physical and mental health to be a mitigator, but fails to explain how this alleged state of affairs relates to his murder of Hannah or is relevant to sentencing. He also argues that his close relationship with his father and nephew should have been a mitigator, but fails to explain why this is relevant to sentencing. Third, he contends that the fact that his criminal history is remote should have been a mitigator, but the trial court observed that the remoteness of his criminal history somewhat mitigated his criminal history. Fourth, he argues that the fact that he expressed sorrow for the loss suffered by the victim's family should have been a mitigator, but fails to explain why this is relevant to sentencing. Finally, he notes that he was willing to waive a jury trial for the habitual offender phase of his trial, but this waiver would have saved the State and the jurors little time and effort because they had already handled a multiple-day jury trial, were already present, and the State had already prepared for the hearing. Consequently, we find no error for any of these reasons.

[18] The judgment of the trial court is affirmed.

Barnes, J., and Crone, J., concur.